IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | C O M P L A I N T |
| AJ 3860, LLC d/b/a THE EXECUTIVE GENTLEMEN'S CLUB, | ) ) ) | **JURY TRIAL DEMAND** |
| Defendant. | ) ) ) | |
| | ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Quatavia Harden and Patrick Franke who were adversely affected by such practices. As alleged with greater specificity below, Quatavia Harden was terminated from her employment as a Bliss Cabaret bartender because its owner, Michael Tomkovich, did not want a Black and/or African American bartender working at Bliss Cabaret. Patrick Franke, the Bliss Cabaret Manager who hired Harden, opposed and refused to participate in the discriminatory conduct and was suspended and terminated as a result.

The United States Equal Employment Opportunity Commission ("EEOC") alleges that Defendant AJ 3860, LLC d/b/a The Executive Gentlemen's Club ("Executive"), is liable for the Title VII violations of its predecessor company, 3860 Ulmerton Road, LLC f/d/b/a Bliss Cabaret ("Bliss Cabaret"), as Executive has continued the business operations of Bliss

1

Cabaret. As such, Executive is responsible for the following discriminatory conduct on the part of Bliss Cabaret: (1) terminating Quatavia Harden based on her color, Black, and her race, African American; and (2) terminating Patrick Franke in retaliation for his objections to and refusal to participate in Bliss Cabaret's discriminatory practices against Black and/or African American employees and applicants for employment as bartenders.

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of Civil Rights Act of 1991, 42 U.S.C. §1981a.

2.    The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida, Tampa Division.

## PARTIES

3.    Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4.    At all relevant times, Defendant AJ 3860, LLC d/b/a The Executive Gentlemen's Club, a Florida corporation, has continuously been doing business in the State of Florida and the City of Clearwater, and has continuously had at least 15 employees.

2

5.   At all relevant times, Executive has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

6.   Defendant AJ 3860, LLC d/b/a The Executive Gentlemen's Club, a Florida corporation, is the successor to 3860 Ulmerton Road, LLC and, as such, is liable for the unlawful conduct, as described herein, that occurred at Bliss Cabaret.

## CONDITIONS PRECEDENT

7.   More than thirty days prior to the institution of this lawsuit, Quatavia Harden ("Harden") and Patrick Franke ("Franke") filed charges with the Commission alleging violations of Title VII by Bliss Cabaret.

8.   The Commission issued a Letter of Determination on April 2, 2014 finding reasonable cause to believe that Harden was discriminated against based on her color and race (Black/African-American) when she was terminated by Bliss Cabaret.

9.   The Commission issued a Letter of Determination on June 24, 2013 finding reasonable cause to believe that Franke was retaliated against when he opposed and refused to participate in discriminatory race or color-based employment decisions at Bliss Cabaret.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

### Corporate Structure

11.    "Bliss Cabaret," the fictitional name for 3860 Ulmerton Road, LLC, is an adult entertainment club that was located at 3860 Ulmerton Road, Clearwater, Florida.

12.    Michael Tomkovich ("Tomkovich") was the sole managing member identified in the corporate structure of 3860 Ulmerton Road, LLC d/b/a Bliss Cabaret.

13.    3860 Ulmerton Road, LLC, had its principle place of business at 3860 Ulmerton Road, Clearwater, Florida, and its mailing address at 5718 East Adamo Dr., Tampa, Florida.

14.    The property located at 3860 Ulmerton Road, Clearwater, Florida in which Bliss Cabaret was operated, is owned by an entity named A & J Central Assisted Living Properties, LLC, which is an entity solely managed by Tomkovich.

15.    Bliss Cabaret was one of approximately ten (10) adult entertainment clubs located throughout Florida and in Georgia that formed South East Showclubs ("SES"), a group of adult entertainment clubs operated by Tomkovich.

16.    Marco "Tony" Hernandez was the SES Regional Manager with authority over Bliss Cabaret during the relevant time period.

17.    As SES Regional Manager, Hernandez received a percentage of the money made at all the SES adult entertainment clubs within the region that he managed.

18.    Regional Manager Hernandez hired Patrick Franke to manage Bliss Cabaret.

19.    Bliss Cabaret's hours of operation were 12:00 p.m. to 3:00 a.m.

20.    Bliss Cabaret employed approximately 65-70 people between February 2011 and May 2012, including bartenders, DJs, door hosts/hostesses, waitresses, and managers.

21.    Bliss Cabaret also hired women to dance at the club, and treated them as independent contractors who paid to use the venue.

22.    Tomkovich participated in the EEOC's investigation of the charges of discrimination filed against Bliss Cabaret by Harden and Franke on behalf of Bliss Cabaret and thus had actual knowledge of the pending charges.

23.    On or about April 21, 2014, Bliss Cabaret notified the EEOC that Bliss Cabaret was no longer in business.

24.    "The Executive Gentlemen's Club," the fictional name for AJ 3860, LLC, is an adult entertainment club that is currently located at 3860 Ulmerton Road, Clearwater, Florida.

25.    AJ 3860, LLC, has its principle place of business at 3860 Ulmerton Road, Clearwater, Florida, and its mailing address at 5718 East Adamo Dr., Tampa, Florida.

26.    Tomkovich is the sole managing member identified in the corporate structure of AJ 3860, LLC d/b/a The Executive Gentlemen's Club.

27.    Executive currently operates out of the property located at 3860 Ulmerton Road, Clearwater, Florida, where Bliss formerly operated.

28.    The property located at 3860 Ulmerton Road, Clearwater, Florida in which Bliss Cabaret was operated and Executive is now operated, continues to be owned by A & J Central Assisted Living Properties, LLC, which is an entity solely managed by Tomkovich.

29.    Executive is an adult entertainment club.

30.    Executive's hours of operation are generally 12:00 p.m. to 3:00 a.m.

31.    Executive is member of the SES group of adult entertainment clubs.

32.    SES's website, that displayed the adult entertainment clubs that fall under its umbrella, features Executive where Bliss was formerly featured.

5

## QUATAVIA HARDEN

33.     In February, 2012, Regional Manager Hernandez instructed Bliss Cabaret Manager Patrick Franke to arrange for Bliss Cabaret to open earlier during the day on Saturdays.

34.     In order to effectuate the new Saturday hours, Franke had to hire a bartender to cover the new shift.

35.     Franke offered the bartender position to Quatavia Harden, with whom he had previously worked.

36.     Harden is African-American and has dark colored skin.

37.     Harden visited Bliss Cabaret before her new shift began to meet with Franke.

38.     At that time, Harden completed employment-related documentation as required.

39.     Harden returned to Bliss on Saturday, February 11, 2012, and worked the new day-time shift.

40.     Harden's work performance at Bliss Cabaret was good.

41.     During communications between Franke and Hernandez beginning on Monday, February 13, Hernandez instructed Franke to fire Harden because of her color, Black and her race, African American.

42.     Hernandez told Franke that Michael Tomkovich did not want Black employees working at Bliss Cabaret.

43.     During times Franke had previously met Tomkovich, Tomkovich repeatedly referred to Blacks and/or African Americans as "niggers."

6

44.    Franke told Hernandez that he did not want to fire Harden but Hernandez insisted that Franke "find someone else."

45.    Franke called Harden and told her Hernandez instructed him to fire her because Tomkovich did not want a Black and/or African American bartender at Bliss Cabaret, or similar words to the same effect.

46.    Harden was terminated from employment at Bliss Cabaret because of her color, Black, and because of her race, African American.

47.    Harden filed a charge of discrimination with the Florida Commission on Human Rights ("FCHR") on February 23, 2012 ("Harden's Charge"), alleging she was fired because of her color and race.

PATRICK FRANKE

48.    On or about October 2011, Franke was recruited to manage Bliss Cabaret by Rob Rice ("Rice") who worked at Gold Club Tampa.

49.    Gold Club Tampa is another adult entertainment club included under the SES umbrella that is managed by Michael Tomkovich.

50.    Rice introduced Franke to SES Regional Manager Hernandez.

51.    Franke met SES Regional Manager Hernandez at Gold Club Tampa, where Hernandez interviewed Franke.

52.    Hernandez offered Franke the position of Bliss Cabaret Manager the same day he was interviewed.

53.    As a Bliss Cabaret manager, Franke's job duties included, among others, the day-to-day management of Bliss Cabaret employees, hiring and firing personnel, organizing

and executing promotions and advertising and otherwise carrying out the objectives and directives of manager Michael Tomkovich.

54.    Franke's work performance was good.

55.    Franke and Hernandez communicated regularly throughout the business day concerning sales, the number of dancers who had paid to use the dance space at Bliss Cabaret and other Bliss Cabaret operational matters.

56.    Approximately two or three days after Hernandez instructed Franke to fire Harden, and Franke fired Harden explaining that Tomkovich did not want a Black and/or African American bartender at Bliss Cabaret, Franke was asked to train Adam (last name unknown) as a manager.

57.    Adam told Franke that if Franke took management's "side" against Harden, Franke could get a job at another SES club.

58.    Franke told Adam that he did not agree with Tomkovich's and Bliss Cabarate's policy of not to hiring Black and/or African American bartenders, or similar words to the same effect.

59.    Approximately one week later, on or about Friday, February 24, 2012, a meeting took place attended by Franke, Tomkovich, Adam, and Danny Gallagher, who was a Bliss Cabaret Assistant Manager at the time.

60.    At the meeting, Tomkovich questioned Franke about the bartender he hired for the new Saturday day shift, referring to Quatavia Harden.

61.    Franke responded that he "did not see a problem with hiring" Harden.

62.    Tomkovich then complained that Harden was not just "Black but *Black*," emphasizing Harden's dark skin color.

63.    Franke stated that he could not agree with management's employment policy decisions based on color and/or race including the decision to terminate a good bartender like Harden, or similar words to the same effect.

64.    Following Franke's opposition to and refusal to participate in management's employment decisions based on color and/or race, Tomkovich told Franke that he would be suspended for a week with half-pay.

65.    Harden's charge of discrimination alleging termination on the basis of race and color, filed with the FCHR on February 23, 2012:

    a.    Identified Franke as the person who advised her to file a complaint against Bliss Cabaret; and

    b.    States that Franke showed her the text from Hernandez instructing Franke to fire Harden.

66.    A notice of Harden's Charge was issued by EEOC to Bliss Cabaret on February 29, 2012.

67.    Franke called Tomkovich on or about the week of March 5, 2012 to ask about returning to work from his suspension.

68.    Tomkovich did not return Franke's calls.

69.    Franke stopped receiving pay checks and was never permitted to return to work.

70.     Franke was terminated from employment in retaliation for opposing and refusing to participate in Bliss Cabaret's decision to fire and not to hire Black and/or African American bartenders.

71.     Franke was replaced by Adam (Last Name Unknown), whom he trained.

72.     Franke filed a Charge of Discrimination on March 14, 2012 with FCHR alleging suspension and termination in retaliation for opposing and refusing to participate in Bliss Cabaret's decision to fire and not to hire Black and/or African American bartenders.

STATEMENT OF CLAIMS

73.     Since at least February 11, 2012, Executive, as successor to Bliss Cabaret, engaged in unlawful employment practices, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by terminating Quatavia Harden's employment based on her color, Black, and her race, African American.

74.     Since at least February 11, 2012, Executive, as successor to Bliss Cabaret, engaged in unlawful employment practices, in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by suspending, then terminating Patrick Franke in retaliation for opposing and refusing to participate in Bliss Cabaret's decisions to fire and not to hire African American bartenders because of their race.

75.     The effect of the practices complained of in paragraphs 33-47 above has been to deprive Harden of equal employment opportunities and otherwise adversely affect her status as an employee because of her color and race.

76.     Additionally, the effect of the practices complained of in paragraphs 48-72 above has been to the practices deprive Franke of employment opportunities and otherwise

10

adversely affect his status as an employee based on his objection to and refusal to support a racially discriminatory corporate culture.

77.    The unlawful employment practices complained of in paragraphs 33-72 above were intentional.

78.    The unlawful employment practices complained of in paragraphs 33-72 above were done with malice or with reckless indifference to the federally protected rights of Harden and Franke.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant Executive, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in participating in racially discriminatory conduct including but not limited to cultivating a racially discriminatory corporate culture.

B.    Order Defendant Executive to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees and applicants as well as explicitly denounce all forms of retaliation, and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendant Executive to make whole Harden and Franke, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Harden and Franke.

11

D.     Order Defendant Executive to make whole Harden and Franke, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 33-72 above.

E.     Order Defendant Executive to make whole Charging Parties Harden and Franke by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 33-72 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.     Order Defendant Executive to pay Charging Parties Harden and Franke punitive damages for its malicious and reckless conduct described in paragraphs 33-72 above, in amounts to be determined at trial.

G.     Grant such further relief as the Court deems necessary and proper in the public interest.

H.     Award the Commission its costs of this action.

<u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its complaint.

P. DAVID LOPEZ
General Counsel
JAMES L. LEE
Deputy General Counsel
GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

12

ROBERT E. WEISBERG
Regional Attorney


KIMBERLY A. McCOY-CRUZ
Supervisory Trial Attorney
Florida Bar No. 153729
Tel: 305-808-1790
Fax: 305-808-1835
kim.cruz@eeoc.gov

AARRIN GOLSON
Trial Attorney
Florida Bar No. 892491
Tel: 305-808-1783
Fax: 305-808-1835
aarrin.golson@eeoc.gov
*Trial Counsel

BEATRIZ BISCARDI ANDRE
Trial Attorney
New York Bar No. 4394599
Tel: 305-808-1753
Fax: 305-808-1835
beatriz.andre@eeoc.gov

U.S. Equal Employment Opportunity
Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131