IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:14-CV-01621-VMC-TGW

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| AJ 3860, LLC d/b/a THE EXECUTIVE GENTLEMEN'S CLUB, | ) ) |
| | ) |
| And | ) |
| | ) |
| SOUTHEAST SHOWCLUBS, LLC, | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**PLAINTIFF EEOC'S MOTION FOR ENTRY OF
FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AJ 3860, LLC AND
<u>SOUTHEAST SHOWCLUBS, LLC</u>**

Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), hereby moves for entry of final default judgment against Defendants AJ 3860, LLC ("AJ 3860") and Southeast Showclubs, LLC ("SES") pursuant to Fed. R.Civ. P. 55(b)(2). As grounds for the motion, and as set forth in the Proposed Final Judgment attached as Exhibit 1, EEOC states as follows:

I.    **Introduction**

The two Defendants in this action are: AJ 3860, LLC, an adult entertainment club now doing business as The Executive Gentlemen's Club ("Executive"), and the successor corporation to 3860 Ulmerton Road, LLC, which previously did business as Bliss Cabaret ("Bliss Cabaret"); and Southeast Showclubs, LLC ("SES"), which is the parent company

1

under which a chain of adult entertainment clubs, including Bliss Cabaret and Executive, were organized. *See* D.E. # 25, Sec. Am. Compl. ("SAC") ¶¶ 4-8, 13-50.

This action was brought by the EEOC, the agency of the United States of America charged with the administration, interpretation and enforcement of employment discrimination laws, against Defendants under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, color and retaliation, and to provide appropriate relief to Quatavia Harden ("Harden") and Patrick Franke ("Franke") who were adversely affected by such practices. *See* SAC ¶ 3, p. 1-2.

The Clerk of Court entered defaults against Executive and SES on May 21, 2015 and July 20, 2015, respectively, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. D.E. ## 37, 42.  On July 21, 2015, the Court directed EEOC to file a motion for entry of final default judgment, which EEOC does now pursuant to Rule 55(b)(2) and the Court's order extending the deadline to do so. D.E. # 43, 45.

## II.     Legal Standards for Entry of Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, "[a] district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear." *Regius v. Starmax Fin., Inc.*, No. 6:14-CV-1252-ORL-41, 2015 WL 3830364, at *1 (M.D. Fla. June 19, 2015).  "A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment." *Id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("The effect of a default judgment is that

the defendant [  ] admits the plaintiff's well-pleaded allegations of fact . . ..."); *GMAC Commercial Mortgage Corp. v. Maitland Hotel Assoc., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).

"Once liability is established, the Court turns to the terms of the judgment . . . [i]f unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise." *Regius*, 2015 WL 3830364, at *2. "[W]here the record is sufficient, a court may be able to determine damages without a hearing." *EEOC v. Titan Waste Servs. Inc.*, No. 3:10CV379, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014); *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("An evidentiary hearing is not a *per se* requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (internal citations omitted).  This is especially so where the district court already "has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages." *Smyth*, 420 F.3d at n.13. Damages may be awarded based on "detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).

### III.     The Well-Pled Allegations of the Complaint Provide a Sufficient Basis for Entry of Default Judgment Against Defendants.

As shown in detail below, the well-pled allegations in the Second Amended Complaint ("SAC"), deemed admitted by virtue of default, are more than sufficient to establish joint and several liability against Defendants for violations of Title VII.

### A. The Facts Establish that Quatavia Harden Was Terminated Based on Her Color and/or Race in Violation of Title VII.

Title VII of the Civil Rights Act protects employees from racial discrimination and unlawful discharge on the basis of race or color. 42 U.S.C. §2000e-2(a).  Direct evidence is "evidence, which if believed, proves the existence of the fact in issue without inference or presumption." *Taylor v. Runyon,* 175 F.3d 861, 867 (11th Cir.1999) (internal citation, quotation and punctuation omitted); *see also Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 642 (11th Cir.1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."). Courts in this jurisdiction find direct evidence where "actions or statements of an employer reflect a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1189 (11th Cir.1997) (internal citation, quotation and punctuation omitted). Under Eleventh Circuit precedent, "only the most blatant remarks, whose intent could mean nothing other than to" retaliate on the basis of an impermissible factor constitute direct evidence of retaliation. *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1086 (11th Cir. 2004) (internal citation and quotation omitted). Where a plaintiff presents direct evidence, the Court does not apply the *McDonnell Douglas* test because where circumstantial evidence is used that test creates an inference of discrimination, whereas no such inference is required when a plaintiff relies on direct evidence. *Taylor,* 175 F.3d at 867 n.2; *see also Thompkins v. Morris Brown Coll.,* 752 F.2d 558, 563 (11th Cir. 1985).

Here, there is direct evidence that Harden was terminated based on race.  SES Regional Manager Marco "Tony" Hernandez instructed Bliss Manager Franke to terminate Harden because she is African-American and Franke did so, expressly advising Harden that Hernandez instructed him to fire her because Michael Tomkovich, owner and manager of Bliss Cabaret and SES, did not want a Black and/or African American bartender at Bliss Cabaret. *See* SAC ¶¶ 59-64, 75; *see EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir. 1990) (statement by decision maker that "if it was his company he wouldn't hire any black people" constituted direct evidence of discrimination); *Caban–Wheeler v. Elsea*, 904 F.2d 1549 (11th Cir.1990) (in Title VII race discrimination case, statement by decision-maker that the program needed a black director was direct evidence of discrimination). By his own words, Franke, Harden's direct supervisor, fired her because she is Black and advised that he was instructed to do so by Marco "Tony" Hernandez, the SES Regional Manager with authority over Bliss Cabaret. *See* SAC ¶¶ 27, 63, 75. Accordingly, this statement constitutes direct evidence of discriminatory intent in the decision to terminate Harden based on her color (Black), and race (African American).  In the absence of evidence that Defendants would have made the same decision notwithstanding the discriminatory bias, the undisputed facts in EEOC's SAC establish that Harden was terminated based on her race and/or color (Black).[1]

---

[1]     Further support for this conclusion is found in paragraphs 78-79 of the SAC which indicate Tomkovich summoned Franke to a meeting in which he questioned Franke about Quatavia Harden.  Franke responded that he "did not see a problem with hiring" Harden, *id.* ¶ 80, to which Tomkovich complained that Harden was not just "Black but *Black*," emphasizing Harden's dark skin color, *id.* ¶ 81.

Harden's discriminatory discharge is also demonstrated by circumstantial evidence. To establish a prima facie case of discriminatory discharge based on color/race, EEOC must show: (1) Harden belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than a similarly-situated individual outside her protected class. *See Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1289 (11th Cir. 2003).  In the context of a motion for default judgment, while it is not necessary that the complaint plead all the elements of a prima facie case, *Surtain v. Hamlin Terr. Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015), courts have found liability when well-pled facts in complaint establish elements of the prima facie case, *see EEOC v. Titan Waste Servs. Inc.*, 2014 WL 931010, at *7.

Harden is a dark-skinned African-American female that was hired as a bartender at Bliss Cabaret, a club located in Clearwater, Florida.  *See* SAC ¶¶ 19, 51-54.  Harden was hired for a new day shift that had been created.  *See id.* ¶¶ 51-53.  Although only employed for one day, she proved to be a good, qualified employee as evidenced by her sales for the shift she worked, *see id.* ¶ 58, and the amount of tips she earned on that one shift*, see* Ex. 2, Harden Decl.  ¶ 7. Shortly thereafter, Franke terminated Harden's employment and informed her that, although he believed she was a great employee, the owner did not want her to return because she is black. *See* SAC ¶¶ 59, 60, 63, 64. Harden was terminated from a bartender position that she was qualified for based on her status as a black African-American which is a clear violation of Title VII.

**B.** **The Facts Establish that Patrick Franke Was Terminated in Retaliation for Opposing the Discriminatory Termination of Quatavia Harden and for Refusing to Implement Discriminatory Employment Policies Based on Race/Color.**

Title VII prohibits an employer from retaliating against an employee for his opposition to an unlawful employment practice, his charge or complaint under Title VII, or his participation in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e–3(a); *see Harris v. Florida Agency for Health Care Admin.*, No. 14-12951, 2015 WL 2344066, at *1 (11th Cir. May 18, 2015). In order to prove retaliation under Title VII, a "plaintiff must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." *Johnson v. Potter*, 732 F. Supp. 2d 1264, 1281 (M.D. Fla. 2010). An employee engages in statutorily protected activity if he explicitly complains to supervisors about discrimination. *Gerard v. Bd. of Regents of Ga.*, 324 F. App'x 818, 2009 WL 1101524, at *7 (11th Cir. Apr. 24, 2009); *Griffin v. Neptune Tech. Grp.*, No. 14-16, 2015 WL 1635939, at *8 (M.D. Ala. Apr. 13, 2015). Also, an employee must have a good faith, objectively reasonable belief that the employer is engaging in unlawful employment practices. *Harris*, 2015 WL 2344066, at *1.

As set forth in the SAC, Franke explicitly objected to the directive that he implement Tomkovich's discriminatory employment practices at Bliss Cabaret, including those implemented against Quatavia Harden, explaining that he did not see any problem hiring Harden in the first place. *See* SAC ¶¶ 79-83. Franke first objected to firing Harden based on her race to Regional Manager Hernandez when Hernandez instructed him to fire Harden. *See id.* ¶¶ 60-64. Franke then objected to Adam (last name unknown), when

7

Adam told Franke that if he agreed with Tomkovich's position to terminate Harden he could continue to work with SES. *See id.* ¶¶ 75-77. Then, in the context of a discussion concerning the termination of Quatavia Harden, Franke told owner Tomkovich directly that he would not support his discriminatory hiring decisions, and Tomkovich immediately suspended Franke. *See id.* ¶¶ 82, 83; *Griffin*, 2015 WL 1635939, at *8 (verbal complaint to supervisor that harassment he experienced had something to do with race was sufficient to put the supervisor on notice that he was complaining of racial discrimination and was therefore sufficient to establish the element of protected expression under the opposition clause). Tomkovich became aware at this time of Harden's EEOC charge which indicated that Franke advised Harden that she should file a charge of discrimination and that Franke gave Harden evidence of her discriminatory termination in the form of a text message from SES Regional Manager Hernandez. *See id.* ¶¶ 84-89.

At the conclusion of his suspension, Franke attempted to contact Tomkovich in order to return to work, but Tomkovich did not return Franke's calls, thus Franke was effectively terminated. *See* SAC ¶¶ 86-88; *Crawford v. Carroll*, 529 F.3d 961, 973-74 (11th Cir. 2008) (noting, after *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006), "the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related" and that "in the context of a Title VII retaliation claim, a materially adverse action "means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination.") Based on the undisputed facts as set forth herein, the SAC contains sufficient well-pled facts to find that Franke's retaliatory termination is unlawful under Title VII.

**C. AJ 3860, LLC is Liable as Successor to 3860 Ulmerton Road, LLC.**

Franke and Harden worked as manager and bartender, respectively, at Bliss Cabaret in 2012. *See* SAC ¶¶ 57, 71, 72. During their employment and at the time of their respective terminations in 2012, the adult entertainment club at which they worked operated as "Bliss Cabaret." *Id.* ¶¶ 34, 63, 64, 86, 88, 89. On or about April 2014, Bliss Cabaret started operating as Executive. *Id.* ¶¶ 34, 49.

Executive, as the successor corporation of Bliss Cabaret, may be held liable for its predecessor's discriminatory acts. *In re Nat'l Airlines, Inc.*, 700 F.2d 695, 698 (11th Cir. 1983) (a successor corporation may be held liable for Title VII violations of its predecessor). In determining whether to hold a successor liable for the discriminatory acts of its predecessor, courts consider: (1) "whether the successor employer had prior notice of the claim against the predecessor;" (2) "whether the predecessor is able to provide the relief requested;" and (3) "whether there has been sufficient continuity in the business operations of the predecessor and the successor to justify the imposition of liability." *Cuervo v. Airport Servs., Inc.*, 984 F. Supp. 2d 1333, 1340 (S.D. Fla. 2013); *see also In re Nat'l Airlines, Inc.*, 700 F.2d at 698.

Consideration of these factors establishes that Executive is liable as the successor to Bliss Cabaret. ***First***, Tomkovich, as sole owner and manager of both Bliss Cabaret and Executive, had notice of these discrimination claims—he participated in the EEOC's

administrative investigation of the charges of discrimination filed against Bliss Cabaret by Harden and Franke on behalf of Bliss Cabaret and thus had actual knowledge of the pending charges before this lawsuit was filed.   *See* SAC ¶¶ 20, 21, 33, 37, 38, 47. ***Second***, according to Bliss Cabaret's representations to EEOC, the company is no longer in business, and thus would not be able to provide relief for its Title VII violations.   *Id.* ¶ 34.   ***Third***, with respect to continuity in the business operations of the predecessor and the successor to justify the imposition of liability, Executive engaged in the exact same business and with the exact same management and ownership as Bliss Cabaret.   *Id.* ¶ 49. Bliss Cabaret and Executive were both adult entertainment clubs located at 3860 Ulmerton Road, Clearwater, Florida, running the same hours of operation.   *Id.* ¶¶ 19, 30, 36, 39, 42, 43.   Bliss Cabaret and Executive used as their official mailing address 5718 East Adamo Dr., Tampa, Florida.   *Id.* ¶¶ 22, 36.   Tomkovich was the sole owner and managing member of Bliss Cabaret and Executive.   *Id.* ¶¶ 20, 37, 47.   Tomkovich exercised control over operations at Bliss Cabaret and Executive.   *Id.* ¶ 48.   Executive replaced Bliss Cabaret within the SES group of clubs.   SES's website, that displayed the adult entertainment clubs that fall under its umbrella, features Executive where Bliss was formerly featured.   *Id.* ¶ 45.   SES Regional Manager Marco "Tony" Hernandez oversaw both Bliss Cabaret's and, later, Executive's operations.   *Id.* ¶ 27.   Moreover, Bliss Cabaret's and Executive's mailing address (5718 East Adamo Dr., Tampa, Florida) is the same as SES corporate headquarters.   *Id.* ¶ 46.   Accordingly, the well-pled facts in the SAC provide a sufficient basis to hold Executive liable for Bliss Cabaret's discriminatory employment practices in violation of Title VII as a successor company.

**D. Southeast Showclubs, LLC is Liable as a Single Integrated Enterprise.**

Bliss Cabaret and its successor, Executive, belonged to a chain of clubs organized under the entity "Southeast Showclubs, LLC" ("SES"). *See* SAC ¶¶ 13-14, 45.   SES existed and operated as a single, integrated enterprise with Bliss Cabaret and Executive, and as a result, is also liable for the Title VII violations against Mr. Franke and Harden. *Perrin v. Florida Power & Light Co.*, No. 83-2990-CIV-JLK, 1984 WL 987, at *1 (S.D. Fla. Apr. 24, 1984) (stating that "overtly distinct entities can be exposed to liability as a single, integrated enterprise" for violations of Title VII).

In determining whether an entity is a single, integrated enterprise with other entities, and therefore liable for Title VII violations, courts consider the following factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987); *see also Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999); *Perrin*, 1984 WL 987, at *1 (S.D. Fla. Apr. 24, 1984).

All four factors weigh in favor of holding SES liable as a single, integrated enterprise with Bliss Cabaret and Executive.  First, ownership and financial control of SES and Bliss Cabaret and Executive was all held by a single individual—Tomkovich. *See* SAC ¶¶ 13, 14, 17, 18, 20, 37, 50(a)-(b). All three entities had common management, with Tomkovich as the ultimate decision-maker and SES Regional Manager Hernandez executing Tomkovich's commands.  *Id.* ¶¶ 13, 14, 16, 21, 27, 38, 47, 50(b), 50(h). Additionally, the entities' operations were interrelated in several aspects: invoices for

liquor sales made no distinction between various SES clubs, and SES clubs would pay invoices of other clubs, *id.* ¶ 50(g); club managers were transferred between SES clubs at the direction of Tomkovich and other SES managements, *id.* ¶ 50(h); and payroll among SES clubs was interrelated and managed by Tomkovich from SES headquarters, *id.* ¶ 50(j).  Most telling, "SES written policies governed day-to-day operations of all SES clubs, including but not limited to, employee relations and book-keeping."  *Id.* ¶ 50(f). Finally, Tomkovich made final decisions related to labor relations at all SES, acting through SES regional managers, at times.  *Id.* ¶ 50(c)-(e). The facts set forth in the Second Amended Complaint sufficiently establish that SES was essentially one in the same as Bliss Cabaret and Executive and should be held jointly and severally liable for the violations of Title VII set forth therein.

**IV.    The Affidavits of Harden and Franke Are Sufficiently Detailed to Provide an Appropriate Basis Upon Which Monetary Damages May be Awarded.**

Under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, back pay, compensatory and punitive damages may be awarded in cases of unlawful employment discrimination violating Title VII.  *See* 42 U.S.C. § 2000e-5(g)(1) (award of back pay is equitable relief for employment discrimination); 42 U.S.C. §1981A (allowing recovery of compensatory and punitive damages).[2] Based on this statutory authority, the undisputed and well-pled allegations of the SAC and the uncontroverted evidence set forth in the Declarations of Quatavia Harden and Patrick Franke, attached hereto as Exhibits 2 and 3, respectively, EEOC asks the Court to award damages in the

---

[2]   The amounts for compensatory and putnive damages sought here are even consistent with statutory caps in place for employers having much less than 100 employees.

following amounts:

| Name | Back Pay | Pre-Judgment Interest | Tax Penalty Off Set | Comp. Damages | Punitive Damages | Total |
|---|---|---|---|---|---|---|
| Quatavia Harden | $160,398.40 | $9,126.47 | $15,546.15 | $25,000.00 | $25,000.00 | $235,071.02 |
| Patrick Franke | $73,513.00 | $5,313.00 | $1,127.45 | $10,000.00 | $40,000.00 | $129,953.45 |
| **Total Award Amount** | | | | | | **$365,024.47** |

### A.    Back Pay, Pre-Judgment Interest & Tax Penalty Off Set

Successful Title VII claimants are presumptively entitled to back pay. *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) (citing *EEOC v. Massey Yardley Chrysler Plymouth, Inc.,* 117 F.3d 1244, 1251 (11th Cir. 1997)). Courts resolve uncertainties in back pay in favor of the discrimination victim. *See Latham,* 172 F.3d at 794 (citing *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 260–61 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115 (1979)).    Additionally, "[a]n award of prejudgment interest adjusts the back pay award for inflation and reflects the present day value of income that should have been paid to the claimant in the past." *EEOC. v. Joe's Stone Crab,* 15 F. Supp. 2d 1364, 1379 (S.D. Fla. 1998).  Awarding prejudgment interest on a back pay award is a matter within the discretion of the Court.  *Lindsey v. Am. Cast Iron Pipe Co.*, 810 F.2d 1094, 1101 (11th Cir. 1987). There is no federal statute mandating the prejudgment interest rate and, therefore, the Court also has the discretion to determine the rate of interest. *Werner Enters., Inc. v. Westwind Marine Int'l, Inc.*, 554 F.3d 1319, 1328 (11th Cir. 2009).  District courts have awarded prejudgment interest at the IRS overpayment/underpayment rate (3%) for 2011-2015, with the interest

compounded daily.[3]

Finally, "[c]ourts have broad discretion in prescribing remedies for victims of discrimination. One such remedy is a tax penalty offset, which compensates victims for additional tax liabilities they would incur as a result of a lump-sum payment." *EEOC v. Beverage Distributors Co.*, 780 F.3d 1018, 1023 (10th Cir. 2015); *id.* ("[Plaintiff] obtained a lump-sum damage award that would increase his tax liability. And the court acted within its discretion in compensating [plaintiff] for the added burden.") As detailed below, EEOC also requests that the Court award tax penalty offsets to compensate Harden and Franke for additional tax liabilities they would incur as a result of lump-sum back pay awards.

### 1.     Quatavia Harden

The underlying information forms the basis of EEOC's back pay calculation:  (1) Harden was hired to work four days a week for 8-hour day shifts, totaling 32 hours per week, Ex. 2, Harden Decl. ¶ 4; (2) had she not been unlawfully terminated, Harden would have worked 47 weeks in 2012, 51weeks in 2013, 51weeks in 2014, and 31weeks to date in 2015; (3) in hourly wages Harden was paid the tipped employees minimum wage which was $4.65 in 2012, $4.77 in 2013, $4.91 in 2014, and $5.03 in 2015, *see* Ex. 4, U.S. Dep't of Labor, Min. Wages Tipped Employees, Historical Tables; and (4) on the one shift she worked she earned $200 in tips, Ex. 2, Harden Decl. ¶ 7, thus she would

---

[3]  *See Soliday v. 7-Eleven, Inc.*, No. 09–cv–807–FtM–29SPC, 2011 WL 4949652 (M.D. Fla. Oct. 17, 2011) (utilizing IRS overpayment rates to calculate backpay interest);  *Armstrong v. Charlotte Cnty. Bd. of Cnty. Comm'rs*, 273 F. Supp. 2d 1312, 1321 (M.D. Fla. 2003) (same); *Taylor v. Cent. Pennsylvania Drug & Alcohol Servs. Corp.*, 890 F. Supp. 360, 369 (M.D. Pa. 1995) ("[T]he adoption of IRS overpayment rates, 26 U.S.C. § 6621(a)(1), [is] the most logically consistent with the purpose for awarding prejudgment interest, i.e., to place the plaintiff in the position she would have been in had she not been unlawfully deprived of her salary.").

have earned $800 per week in tips had she not been unlawfully terminated.

Based on the number of weeks Harden would have worked if not for the unlawful termination, she would have earned $6,993.60 in 2012, $7,784.64 in 2013, $8,013.12 in 2014, and $4,989.76 to date in 2015 based on the tipped employees' minimum wage. *See* Ex. 5, Summary Tables of Harden Back Pay Calculation & Interest Calculation; Ex. 4. Moreover, if Harden had not been unlawfully terminated, she would have earned approximately $37,600 in tips in 2012, $40,800 in tips in 2013, $40,800 in tips in 2014, and $24,800 in tips to date in 2015. *See* Ex. 5. Harden's total lost earnings would have equaled $44,593.60 for 2012, $48,584.64 for 2013, $48,813.12 for 2014, and $29,789.76 for 2015. *Id.*

Because Harden mitigated her damages, her interim earnings are subtracted from these amounts, Ex. 2, Harden Decl. ¶¶ 15-17, bringing total losses to $44,593.60 for 2012, $48,584.64 for 2013, $44,293.02 for 2014, and $22,927.14 for 2015. *See* Ex. 5. Accordingly, EEOC seeks a total back pay award of **$160,398.40** for Quatavia Harden. *See id.*

EEOC also requests the equitable remedy of an award of prejudgment interest on its requested backpay award for Harden based on the IRS overpayment/underpayment rate (3%) for 2011-2015, with daily compounded interest. *See* Ex. 6, IRS Overpayment/Underpayment Table, at 11; Ex. 5. The total interest amounts on total losses would thus equal $4,251.55 for 2012, $3,165.55 for 2013, $1,491.64 for 2014, and $217.73 for 2015. *See* Ex. 5. Accordingly, EEOC respectfully requests that the Court back pay award include prejudgment interest in the amount of **$9,126.47**. *Id.*

Finally, EEOC requests a tax penalty offset on Harden's back pay award.  Based on IRS tax tables, EEOC calculates the difference between Harden's tax liability had her back pay been appropriately apportioned among the years she earned it, and her tax liability if back pay is awarded in a lump sum payment, as **$15,546.15**.  *See* Exs. 7-10, IRS Tax Tables 2012-15; Ex. 11, Tax Penalty Calculations.

### 2.    Patrick Franke

The underlying information forms the basis of EEOC's back pay calculation: (1) Franke was hired to work at Bliss as a salaried manager with a base pay of $700 per week plus commissions and tips, which averaged $400 a week, Ex. 3, Franke Decl. ¶¶ 9, 10; (2) had he not been unlawfully terminated, Franke would have worked 44 weeks in 2012, 52 weeks in 2013, 52 weeks in 2014 and 31 weeks to date in 2015; (3) Franke would have earned $1,100 a week had he not been unlawfully terminated, Ex. 3, Franke Decl. ¶ 10. Based on the number of weeks Franke would have worked had he not been terminated, Franke's total lost earnings, including base salary and estimated commission and tips, equal $48,400 for 2012, $57,200 for 2013, $57,200 for 2014 and $34,100 for 2015. *See* Ex. 12, Summary Tables of Franke Back Pay Calculation & Interest Calculation.

Because Franke mitigated his damages, his interim earnings are subtracted from these amounts, Ex. 3, Franke Decl. ¶¶ 41-44, bringing total losses to 38,000 for 2012, $21,200 for 2013, $7,150 for 2014 and $7,164 in 2015.  Accordingly, EEOC is seeking a back pay award of **$73,513** for Patrick Franke.  *See* Ex. 12.

EEOC also requests an award of prejudgment interest on any backpay award for Franke based on the IRS overpayment/underpayment rate (3%) for 2011-2015, with daily compounded interest.  *See* Ex. 6, at 11; Ex. 12.  The total interest amounts on total losses would thus equal $3,622.92 for 2012, $1,381.29 for 2013, $240.75 for 2014, and $68.03 for 2015.  *See* Ex. 12.  Accordingly, EEOC respectfully requests that the Court back pay award include prejudgment interest in the amount of **$5,313**.  *Id.*

Finally, EEOC requests a tax penalty offset on Franke's back pay award.  Based on IRS tax tables, EEOC calculates the difference between Franke's tax liability had his back pay been appropriately apportioned among the years he earned it, and his tax liability if back pay is awarded in a lump sum payment, as **$1,127.45**.  *See* Exs. 7-10, IRS Tax Tables 2012-15; Ex. 13, Tax Penalty Calculations.

## B.   Compensatory Damages

Compensatory damages for Title VII violations can be awarded for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." 42 U.S.C. § 1981a(b)(3).  Compensatory damages may be inferred from the circumstances as well as proved by testimony. *Carey v. Piphus*, 435 U.S. 247, 263-264 (1978). A plaintiff may be compensated for intangible, psychological injuries as well as financial, property, or physical harms. *See Carey,* 435 U.S. at 263-64; *see also Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999).

### 1.   Quatavia Harden

As set forth in detail in Harden's Declaration, Harden endured emotional pain and

17

suffering as a result of her unlawful termination: her self-esteem suffered, she felt stressed, self-critical, and experienced fear. *See* Ex. 2, Harden Decl. ¶¶ 9-11. This testimony is sufficient to support an award of $25,000.00 in compensatory damages for Harden. See *Bogle v. McClure*, 332 F.3d 1347 (11th Cir. 2003) (in a § 1983 case, each plaintiff was awarded between $50,000 and $150,000 in compensatory damages based on employees' testimony about "the emotional and mental pain they suffered" as a result of the racially-based job transfers to dead-end positions); *Hornsby v. Three Dollar Cafe, III, Inc.*, No. 03-1668, 2007 WL 2106304, at *5 (N.D. Ga. July 17, 2007) (in a Title VII and § 1981 case, plaintiff awarded $25,000 in compensatory damages based on testimony "she was devastated by her termination and suffered hurt and wounded feelings resulting from her indignities to her self-respect, sensibilities and pride"); *Hearn v. Gen. Elec. Co.*, 927 F. Supp. 1486 (M.D. Ala. 1996) (in a Title VII case, two plaintiffs awarded $50,000 and $20,000, respectively, for testifying to "living in fear" and having "a very rough experience" as a result of the discrimination).

### 2.  Patrick Franke

Based on Franke's declaration, *see generally* Ex. 3, he attest that he experienced significant pain and suffering after being terminated from Bliss. After his termination, Bliss management started negative rumors about Franke and his performance as a manager for Bliss which served to discourage other adult entertainment clubs from hiring Franke. *See* Ex. 3, Franke Decl. ¶¶ 34-40. This caused Franke's confidence to suffer. *Id.* ¶ 39. He was unable to find employment for over six months, which caused him to lose his apartment as well as fall behind in his car and credit card payments, thus negatively

18

affected his credit.  *Id.* ¶ 40.  This testimony is sufficient to support an award of $10,000 in non-pecuniary compensatory damages for Franke. *Davis v. Florida Agency for Health Care Admin.*, No. 14-13563, 2015 WL 2344108, at *4 (11th Cir. May 18, 2015) (employee's testimony about his own resulting lower self-esteem supported a $300,000 compensatory damages award); *Ash v. Tyson Foods, Inc.*, 664 F.3d 883 (11th Cir. 2011) (award of $335,000 warranted where plaintiff testified that he felt degraded and his confidence suffered when he was required to train someone else for position he was denied.); *Johnson v. TMI Mgmt. Sys., Inc.*, No. CIV.A. 11-0221-WS-M, 2012 WL 3257809, at *3 (S.D. Ala. Aug. 7, 2012) (plaintiff's testimony that she incurred stress and financial and emotional hardship supported a $50,000 compensatory damage award).

## C.    Punitive Damages

The well-pled allegations in the Second Amended Complaint and the determination that Harden and Franke were subjected to intentional discrimination and/or retaliation satisfies the requisite state of mind requirement sufficient to support an award of punitive damages. *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999) (punitive damages should be assessed if there is evidence that the defendant acts with malice or with reckless indifference to the federally protected rights of the plaintiff); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1337-38 (11th Cir. 2000) (defendant's knowledge that it is illegal to treat employees differently on account of race, coupled with credible evidence that defendant intentionally did so, is sufficient for a reasonable jury to conclude that the *Kolstad* standard for punitive damages has been satisfied); *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020 (9th  Cir. 2003) (review of the sufficiency

of the evidence to support punitive damages is nearly identical to substantial evidence review for liability for discrimination); *see also* 42 U.S.C. § 1981a(b)(1). EEOC must also "show either that the discriminating employee was 'high up the corporate hierarchy' or that the 'higher management' countenanced or approved [the employee's] behavior." *Ward v. Casual Rest. Concepts, Inc.*, No. 8:10-CV-2640-EAK-TGW, 2012 U.S. Dist. LEXIS 26659, 22 (M.D. Fla. Mar. 1, 2012) (citing *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1323 (11th Cir. 1999)).

The record evidence establishes that Defendants, through their owner and top manager Michael Tomkovich, acted with reckless indifference to the federally protected rights of Harden and Franke. Tomkovich, the owner and top manager of SES, the umbrella company operating numerous adult entertainment clubs including Bliss Cabaret and Executive, himself stated that having a black bartender at Bliss Cabaret was undesireable and problematic. *See* SAC ¶¶ 13-15, 47, 79-81; Ex. 3, Franke Decl. ¶¶ 28-29. He was also known to repeatedly use racially derogatory epithets toward Blacks and African Americans. *See* SAC ¶61.

SES management, specifically Marco "Tony" Hernandez, directed Franke to fire Harden because of her color and race, despite Franke's objections. *See* SAC ¶¶ 59-62, 75; Ex. 3, Franke Decl. ¶¶ 19-20, 22. Moreover, Hernandez made it clear that Tomkovich did not want Black employees working at Bliss Cabaret. *See* SAC ¶¶ 59-60; Ex. 3, Franke Decl. ¶ 20. There is no question Tomkovich and Hernandez acted with malice and reckless indifference to Harden's right not to be discriminated against based on her color and race. Accordingly, EEOC seeks punitive damages for Harden in the

amount of $25,000.

Franke's sworn Declaration also establishes that Defendants acted with reckless indifference to his federally protected right to be free from unlawful retaliation. Franke openly opposed the discriminatory practices mandated by Tomkovich of Bliss Cabaret and SES. *See* SAC ¶¶ 60-64, 75-77, 82-83; Ex. 3, Franke Decl. ¶ 19, 22.  As a result, he was forced to train his replacement and during this training, he was advised that if he went along with Tomkovich, he could continue to be employed at another SES club.  *See* SAC ¶¶ 75-77; Ex. 3, Franke Decl. ¶¶ 24-26.  Based on Franke's refusal to acquiesce to the discriminatory practices, he was terminated. *See* SAC ¶¶ 83-89; Ex. 3, Franke Decl. ¶ 30-33. Tomkovich, owner and operator of Bliss Cabaret and SES, acted with malice and reckless indifference to Franke's right to not be retaliated against for opposing discriminatory practices. Accordingly, EEOC seeks punitive damages for Franke in the amount of $ 25,000.

Punitive damage awards in the amounts sought for the conduct at issue here are appropriate and proper.  *See Bogle*, 332 F.3d at 1362 (punitive award of $2 million not excessive); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1283 (11th Cir. 2008) (award of $500,000 in punitive damages was warranted in light of Defendant's malicious behavior which included terminating any black employee that complained, and managements use of the n-word); *EEOC v. W&O, Inc.*, 213 F.3d 600 (11th Cir. 2000) (award of $100,000 in punitive damages was warranted where injury was intentional and was done through affirmative acts); *Bains, LLC v. Arco Prods. Co.*, 405 F.3d 764, 775-76 (9th Cir. 2005), *affirming in part, vacating in part, and remanding* 220 F. Supp. 2d 1193,

1199 (in a § 1981 racial discrimination action, Ninth Circuit held that $5 million dollars in punitive damages was excessive where there was direct evidence of discrimination with manager stating he "kick[ed] those ragheads out," but also finding that punitive damages award should be in the range of $300,000 to $450,000).

## V.   Injunctive Relief

The Eleventh Circuit has held that "the EEOC is normally entitled to injunctive relief where it proves discrimination against one employee and the employer fails to prove that the violation is not likely to recur." *EEOC v. Fed. Express Corp.*, 180 F. App'x 865, 867 (11th Cir. 2006); *see also U.S. Commodity Futures Trading Comm'n v. Altamont Global Partners, LLC*, No. 6:12-CV-1095-ORL-31, 2014 WL 644693, at *10 (M.D. Fla. Feb. 19, 2014). "The scope of injunctive relief is dictated by the extent of the violation established." *Lewis v. Casey,* 518 U.S. 343, 359 (1996).

EEOC also seeks injunctive relief in this action to protect future employees at Defendants' adult entertainment clubs from being subjected to race/color discrimination and retaliation for opposing it. When the EEOC brings an enforcement action, the agency is seeking not only make whole relief for the employee, but also to vindicate a public interest. *EEOC v. Waffle House*, 534 U.S. 279, 296 (2002). As such, the Eleventh Circuit Court of Appeals has recognized that EEOC has authority to seek injunctive relief. *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1253 (11th Cir. 1997) ("[T]here would be little point in its [EEOC] having the independent power to sue if it could not obtain relief beyond that fashioned for the individual claimant."). Specifically, EEOC is entitled to injunctive relief where it proves discrimination against one

employee, and the employer fails to prove that the violation is not likely to recur. *Id.* citing *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993); *EEOC v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 469-70 (5th Cir. 2013) (*en banc*) (holding that injunctive relief is mandatory in the wake of a Title VII violation "absent clear and convincing proof of no reasonable probability of further noncompliance with the law.").

Once a plaintiff has proven that discrimination occurred, a district court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) (citation and internal quotation marks omitted). Indeed, the "trial judge . . . bears a special responsibility in the public interest to resolve the employment dispute . . . [and] is invested with wide discretion in modeling his decree to ensure compliance with the Act." *Hutchings v. U.S. Industries, Inc.*, 428 F.2d 303, 311-12 (5th Cir. 1970); *see also James v. Stockham Valves & Fitting Co.*, 559 F.2d 310, 354 (5th Cir. 1977) ("absent clear and convincing proof of no reasonable probability of further noncompliance with the law, a grant of injunctive relief is mandatory").

Here, the record evidence indicates violations are likely to re-occur on a protected class-wide basis. Tomkovich required the firing of a bartender simply because she was a black African-American and described her as being "not just Black, but *Black.*" *See* SAC ¶¶ 64, 79-83. Franke indicated that Tomkovich used terms such as "nigger" on a regular basis at the workplace. *See id.* ¶ 61. Tomkovich's racial animus explicit and unapologetic. Ex. 3, Franke Decl. ¶¶ 28-30. As the sole decision-maker at all SES clubs,

23

Tomkovich is highly likely to implement discriminatory hiring practices against African Americans in the future and to take action similar to the adverse action taken against Franke for opposing the discriminatory hiring practices. *See, e.g.,* SAC ¶76.

Indeed, the corporate culture established and enforced under the ownership and management of Tomkovich warrants injunctive relief against all facilities under his control. As the owner of the company, he is "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); where harasser was president of a corporation)); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 758 (1998) (employer may be liable for agents whose "high rank in the company makes him or her the employer's alter ego").

Based on the foregoing, and as outlined in detail in the Proposed Final Judgment attached as Exhibit 1, EEOC requests that Defendants be enjoined from participating in and/or permitting discriminatory behavior based on race and/or color and retaliation for opposing such unlawful behavior. EEOC further requests that Defendants be required to create and disseminate a written policy prohibiting discrimination and retaliation. EEOC also requests this Court require Defendants to provide workforce statistics and applicant flow data reports on a quarterly basis and to post a notice regarding the outcome of this case.

**WHEREFORE**, Plaintiff EEOC respectfully requests that the Court enter an Order of Final Default Judgment against Defendant AJ 3860, LLC and Southeast Showclubs, LLC, jointly and severally, in accordance with Federal Rule of Civil

Procedure 55(b)(2), award monetary damages based on the well-pled allegations of the Second Amended Complaint and the Declarations provided herein and award injunctive relief designed to remedy the unlawful practices address herein, as set forth in the Proposed Final Judgment, attached as Exhibit 1.

Date: August 7, 2015                                    Respectfully Submitted,

                                                        s/ Beatriz Biscardi Andre
                                                        BEATRIZ BISCARDI ANDRE
                                                        Trial Attorney
                                                        NY Bar No. 4394599
                                                        Tel: 305-808-1753
                                                        Fax: 305-808-1835
                                                        beatriz.andre@eeoc.gov

                                                        AARRIN GOLSON
                                                        Trial Attorney
                                                        Florida Bar No. 892491
                                                        Tel: 305-808-1783
                                                        Fax: 305-808-1835
                                                        aarrin.golson@eeoc.gov

                                                        U.S. Equal Employment
                                                        Opportunity Commission
                                                        Miami District Office
                                                        100 S.E. 2nd Street, Suite 1500
                                                        Miami, Florida 33131

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2015, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF.  I also caused copies of this motion to be mailed via regular U.S. Mail to: (1) AJ 3860, LLC, c/o Registered Agent, Michael Tomkovich, 5718 East Adamo Dr., Tampa, Florida 33619, and (2) Southeast Showclubs, LLC, c/o Registered Agent, Michael Tomkovich, 320 General Doolittle Dr., Jacksonville, Florida 32225.

                                    s/ Beatriz B. André
                                    Beatriz B. André